F. Elizabeth Connor IMIRIE, Appellant,

v.

George Wady IMIRIE and S. Walter Bogley, Ancillary Executors of Estate of John Imirie, Appellees.

No. 13399.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 8, 1957.

Decided May 2, 1957.

Petition for Rehearing Denied
May 28, 1957.

Mr. Robert M. Gray, Washington, D. C., with whom Miss Vivian V. Simpson, Rockville, Md., was on the brief, for appellant.

Mr. James M. Earnest, Washington, D. C., with whom Mr. George R. Jacobi, Washington, D. C., was on the brief, for appellees.

Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

John Imirie, a patent attorney and agent, employed his wife, Mrs. F. Elizabeth Connor Imirie, as the salaried bookkeeper and manager of his office. Shortly after their marriage, he took steps to have three of his existing checking accounts put in the joint names of himself and his wife. He also established a new checking account in their joint names in a Canadian bank. Both signed forms furnished by the banks, reciting joint ownership "with right of survivorship." Prior to this, two of the existing accounts had been maintained for the purposes of the husband's business. They were thereafter operated in much the same way as in the past, namely, the funds deposited in the accounts were derived from the husband's business, and were withdrawn—with but few, if any, exceptions [1]—to pay expenses of the busi-

---

[1] It appears that withdrawals from one of these accounts were solely for purposes of the business. Of approximately 3,200 checks drawn on the other account, only about 196 were drawn by Mrs. Imirie on checks imprinted with her name, the others being drawn for business purposes on checks imprinted with the husband's name. The 196 checks, with a very few possible but not clear exceptions, do not

ness. The Canadian account was opened and maintained with funds of the husband and the withdrawals were entirely for his business purposes. The fourth account—called the "rent" account—was operated solely by the husband for his personal benefit both before and after it was made joint. The original funds were his and the rentals deposited thereafter were derived from real estate owned individually by him. The passbooks and checkbooks for all the accounts were kept at the office.

About five years after the marriage, Mr. Imirie died. Mrs. Imirie then withdrew all the funds in the four accounts, depositing them elsewhere under her own name. The executors of the husband's estate later brought suit in the District Court to impress with a constructive trust the proceeds of the four accounts. The defendant widow's deposition was taken, in which she stated that her husband had made the accounts joint so that she could use them in any way that she saw fit. On the basis of that deposition, the pleadings, and certain other materials, the trial court granted summary judgment to the plaintiffs. It was conceded by counsel for both parties that no further evidence could be offered.

■■■■ We find no error in the District Court's disposition of the case. No genuine issue of material fact was presented. To be sure, the printed bank cards which both signed recited a right of survivor-ship, but this in itself is not sufficient to establish a survivorship interest where the funds have been provided by only one of the signatories: the presumption is the other way, under Harrington v. Emmerman, 1950, 88 U.S.App.D.C. 23, 186 F.2d 757, and Murray v. Gadsden, 1952, 91 U.S.App.D.C. 38, 197 F.2d 194, 33 A.L.R.2d 554.[2] The other evidence fails to rebut the presumption. Mrs. Imirie did not testify that her husband stated in his conversations with her that she was to have the funds remaining in the accounts by right of survivorship after his death. Thus, her deposition would not support an inference that he intended to give her such an interest,[3] even though it may support an inference that he intended that she share with him a present right to withdraw the funds in the accounts as she saw fit until his death.

We need add only that the dangers inherent in situations of this sort are indeed serious. If a wife can take by survivorship the funds in the commercial checking accounts of a business conducted by her husband, in disregard of the claims of creditors or other interested persons, a ready means of producing fraud and injustice has been created. If such a result is ever to be reached, it should only be upon clear evidence of the husband's donative intent and after careful judicial scrutiny of the impact of the transaction.[4] Much the same is

---

appear to have been for the personal benefit of Mrs. Imirie. Each party maintained separate personal checking accounts in addition to the accounts here in question.

2. In Thompson v. Thompson, 100 U.S.App. D.C. 285, 244 F.2d 374, we declined, sitting as a division of the court, to reexamine those cases. Perhaps, however, we should here add that we do not read those cases as holding that any right of survivorship in a joint account is automatically defeated if the donating party retains a power to withdraw during his lifetime. Nor do we read them as holding that any document purporting to create a right of survivorship in a joint account is necessarily testamentary in character. On the contrary, we think

that if the intent of the donor of the joint account to create a right of survivorship is clear, and no principle of public policy is violated by recognizing the right in the particular case, the right should be recognized.

3. Since it would avail nothing here, we do not find it necessary to decide whether the testimony of the survivor on this question is properly to be received. Cf. D.C.Code 1951, § 14–302.

4. Compare Kepner, The Joint and Survivorship Bank Account—A Concept Without a Name, 41 Calif.L.Rev. 596 at 627: "If the person furnishing the funds has the right to revoke, which apparently he has in most jurisdictions, the entire account should be subject to his obligations."

to be said of personal accounts, though here the risks are less, and the wife's claims may perhaps be viewed with a more favorable eye. Any contributions she has made to a joint account, whether business or personal, should of course be accorded appropriate recognition.

The position of banking institutions in these matters is protected by legislation. See D.C.Code 1951, § 26–201. Perhaps Congress may in due time wish to consider legislation clarifying the rights of depositors, creditors and other interested parties. See Kepner, The Joint and Survivorship Bank Account—A Concept Without a Name, supra n. 4 at 636 (1953).

The judgment of the District Court will accordingly be

Affirmed.