Armin U. KUDER, Personal Representative of the Estate of Viola M. Blackmon, Appellant,

v.

UNITED NATIONAL BANK, Appellee.

No. 84–897.

District of Columbia Court of Appeals.

Argued June 5, 1985.

Decided Sept. 9, 1985.

Marie A. Fitzgerald, Washington, D.C., with whom Herbert B. Dixon, Jr., Washington, D.C. was on brief for appellant.

Mitchell H. Stabbe, Washington, D.C., for appellee.

Before NEWMAN and BELSON, Associate Judges, and GALLAGHER, Associate Judge, Retired.

NEWMAN, Associate Judge:

Kuder, in his capacity as Administrator of the Estate of Viola M. Blackmon, contends the trial court committed error both

by denying his motion for summary judgment against United National Bank (the bank) and in granting the bank's motion for summary judgment against him. We affirm the denial of Kuder's motion for summary judgment and reverse the order granting the bank's motion.

Viola M. Blackmon was the mother of Vincent Blackmon; she died intestate on or about October 11, 1982. During October 1977, a Virginia law firm, Odin, Feldman and Pittleman P.C., issued a check in the sum of $33,000.47 payable to Viola M. Blackmon, purportedly representing proceeds due her from a real estate transaction. This check came into the possession of Vincent Blackmon; he presented it for payment to the bank with instructions that the proceeds be deposited into an account he held jointly with his wife at the bank. The check bore what purported to be the valid endorsement of Viola M. Blackmon; Vincent Blackmon presented to the bank at some time what purported to be a general power of attorney dated October 27, 1977, authorizing him to act on behalf of his mother. The bank negotiated the check and deposited the proceeds in Vincent Blackmon's account. He subsequently withdrew these funds.

▮ After demand had been made on the bank on behalf of Viola M. Blackmon for the proceeds of the check, and the bank's refusal, suit was filed on her behalf against the bank and others seeking return of the proceeds of the check.[1] After discovery, both Kuder and the bank moved for summary judgment. Kuder contended that the bank had acted wrongfully in negotiating the check and paying the proceeds to Vincent Blackmon. To establish Vincent Blackmon's lack of authority, Kuder relied

on the affidavit of Frances Cheatham, a niece of Viola M. Blackmon. This affidavit averred that Viola M. Blackmon had lived with Cheatham from September 1976 until the date of the affidavit (October 31, 1979); that during all that time, Viola Blackmon was physically incapable of signing any document, and was mentally incapable of authorizing anyone to manage her affairs. To establish Vincent Blackmon's actual authority to negotiate the check and to deposit the proceeds into his own account, the bank relied on the deposition testimony of Vincent Blackmon.[2] In this deposition, Vincent Blackmon testified that his mother had authorized him orally in 1975 to transact all her affairs; he further testified that in 1977, she specifically authorized him to negotiate the check at issue in this case. The bank relies on the claimed 1975 oral authorization to support the order granting summary judgment.

Summary judgment should be granted only if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. Super.Ct.Civ.R. 56(c). Since the moving party has the burden of establishing that no genuine issue of material fact is in dispute, "the material lodged in support of the motion must be viewed in the light most favorable to the opposing party." *Nader v. de Toledano*, 408 A.2d 31, 42 (D.C.1979) (citations omitted). "This strict standard is imposed because summary judgment is an extreme remedy which should be granted only where 'it is quite clear what the truth is.'" *McCoy v. Quadrangle Development Corp.*, 470 A.2d 1256, 1258 (D.C.1983) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944). Our standard for review is the same as that for

---

**1.** Suit was originally filed by a Conservator appointed to manage her affairs by order of the Superior Court dated September 8, 1978. Upon her death, Kuder, as Administrator, was substituted as plaintiff. The Virginia law firm, Vincent Blackmon and Fredricka Blackmon (the wife of Vincent Blackmon) also were named as defendants. The bank cross-claimed against Vincent Blackmon and his wife.

**2.** Although this deposition was taken in a related civil action in the United States District Court for the District of Columbia in which the estate of Viola M. Blackmon was not a party, it may properly be used in this case as an affidavit in support of a motion for summary judgment. *See generally* Super.Ct.Civ.R. 56(c).

the trial court in considering whether a motion for summary judgment should be granted, *Wyman v. Roesner*, 439 A.2d 516, 519 (D.C.1981); as we have said, summary judgment should be granted "sparingly in cases involving motive or intent." *Id.*

The party asserting an agency relationship has the burden of proof on that issue. *Smith v. Jenkins*, 452 A.2d 333, 335 (D.C.1982). While no particular words of art are necessary, "[g]enerally an agency relationship results when one person authorizes another to act on his behalf subject to his, and the other consents to do so." *Id.* "It is well settled that, where the evidence permits reasonably conflicting inferences, ..., the existence of agency, and its nature and extent, are questions of fact" to be decided by the trier of fact. *Lewis v. Washington Metropolitan Area Transit Authority*, 463 A.2d 666, 673 (D.C.1983).

Where an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate. Where the evidentiary matter in support of the motion does not establish absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.

FED.R.CIV.P. 56(e); Advisory Committee's Note (1963). *See also Cross v. United States*, 336 F.2d 431, 433 (2d Cir.1964).[3] "[T]he mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact." *Sartor, supra*, 321 U.S. at 628, 64 S.Ct. at 729 (quoting *Sonnen-*

*theil v. Christian Moerlein Brewing Co.*, 172 U.S. 401, 408, 19 S.Ct. 233, 235, 43 L.Ed. 492 (1899). Where the motion for summary judgment is based solely on the testimony of an interested party and knowledge of the basis for that testimony is largely in the hands of the witness, summary judgment ordinarily should not be granted. *See Poller v. Columbia Broadcasting System Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962), and *Cross, supra*, 336 F.2d at 433. In such circumstances, "[i]t is only when the witnesses are present and subject to cross-examination that the credibility and the weight to be given their testimony can be appraised." *Id.*

This has been the rule in our jurisdiction for some time. In *Dewey v. Clark*, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950), the court in discussing the major cases in the field at that time stated:

The court thought that with credibility a vital factor plaintiff must not be deprived of cross-examination of the defendant. Under these circumstances, "we cannot say—as we think we must say to sustain a motion for summary judgment—that at the close of the trial the judge could properly direct a verdict."

*Dewey, supra*, 86 U.S.App.D.C. at 144, 180 F.2d at 773 (quoting *Arnstein v. Porter*, 154 F.2d 464, 470 (2d Cir.1946) ).[4]

On the record before us, Vincent Blackmon's deposition testimony about authorization given him by his mother in 1977 is controverted by Cheatham's Affidavit of Viola M. Blackmon's lack of physical and mental capacity from 1976 onward. A genuine issue of material fact exists as to the

---

**3.** The secondary authorities are also in accord on this issue. *See* 6 Pt. 2 J. MOORE & J. WICKER, MOORE'S FEDERAL PRACTICE ¶ 56.14[4] (2d ed. 1985); 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2726 (2d ed. 1983); Bauman, *A Rationale of Summary Judgment*, 33 IND.L.J. 467, 481–85 (1958); Kaplan, *Amendments of the Federal Rules of Civil Procedure, 1961–63* (II) 77 HARV.L.REV. 801, 827 (1964).

**4.** This rationale is similar to that underlying D.C. Code § 14–302 (1981) (The Dead Man Stat-

ute). This statute prohibits a judgment against an incompetent or a decedent's estate based on the uncorroborated testimony of the plaintiff about the transaction etc. with the incompetent or decedent. *See Toliver v. Durham*, 240 A.2d 359 (D.C.1968). For discussion of such statutes in the context of summary judgment, *see Philips v. Joseph Kantor & Company*, 31 N.Y.2d 307, 338 N.Y.S.2d 882, 291 N.E.2d 129 (N.Y.1972); Annot., 67 A.L.R.3d 970 (1975).

fact of and validity of the asserted 1977 authorization. The bank seeks to escape this result by relying on the purported 1975 oral authorization. This attempt fails. To say the least, Vincent Blackmon is an interested person. Given the death of his mother, apparently he is the only person available to testify concerning the fact of, as well as the nature and extent of the asserted 1975 oral authorization. No evidence was submitted by the bank to corroborate the testimony of Vincent Blackmon.[5] The record in this case cries out with issues as to the credibility of Vincent Blackmon.[6]

 We note that granting summary judgment may have been inappropriate for yet another reason, one not raised by the parties. Where an agent-principal relationship exist and the principal thereafter loses the requisite mental capacity, the agency is generally held terminated. *See* 3 AM.JUR.2d Agency § 55 (1962); RESTATEMENT (SECOND) OF AGENCY, § 122 (1958). Thus, Cheatham's affidavit may raise a genuine issue of material fact of termination of the alleged 1975 authorization, even if such authorization is found to exist.[7]

 Kuder also appeals the court's denial of his motion for summary judgment. Normally, denials of summary judgment are not appealable since they are not final judgments. *Whitman v. Noel*, 53 A.2d 280, 281–82 (D.C.1947). In this case where the grant of summary judgment to one party constitutes a final judgment in the case, and such order is appealed, we hold that the order denying summary judgment to an adverse party is also appealable. *See Stewart v. United States*, 186 F.2d 627,

634 (7th Cir.), *cert. denied*, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367 (1951); Annot., 15 A.L.R.3d 899, 925 (1967). For some of the reasons set forth in our discussion of the bank's motion, we hold that the trial court did not err in denying Kuder's motion.

*Reversed in part, affirmed in part and remanded for further proceedings consistent with the opinion.*

---

5. The written "Power of Attorney" dated October 28, 1977, bearing what purports to be the signature of Viola M. Blackmon contains a notary public's jurat attesting that it was in fact signed by Vincent Blackmon. It is doubtful whether this document can lend corroboration to anything beneficial to the bank.

6. For example, the record in this case reflects that a purported conveyance of certain real estate (not the subject of this dispute) from Viola M. Blackmon to herself and Vincent Blackmon,

and subsequent encumbering thereof, were invalidated by the Superior Court in an action brought by her Conservator.

7. We find no merit to the bank's contention that since Vincent Blackmon is the sole heir at law and next of kin of Viola M. Blackmon, whose estate is "solvent" (if real estate is included), and since it would have a claim-over against him for any amount that it has to pay the estate, it should be held not liable to the estate.